**Lummie H. TURK and Farley B. Turk, Appellants,**

v.

**Gus C. ROBLES, Appellee.**

**No. 01–89–00416–CV.**

Court of Appeals of Texas, Houston (1st Dist.).

April 18, 1991.

Rehearing Overruled May 30, 1991.

Craig Olivier, Jeffrey W. Steidley, Houston, for appellants.

Randall Lamb, Christina S. Crockett, Houston, for appellee.

Before DUNN, BASS and O'CONNOR, JJ.

## OPINION

DUNN, Justice.

This is an appeal from a will contest. Gus C. Robles filed the 1984 will of Grace Seaver for probate, and Lummie and Farley Turk, her nephews, filed a contest. After a jury trial, the court admitted Grace Seaver's 1984 will to probate. Based on our finding of harmless error, we affirm.

Robles lived with Grace Seaver and her husband, who were Harris County residents, beginning in 1977. When Mr. Seaver's health failed, he gave Robles a power of attorney and signed a will leaving his property to Mrs. Seaver or, if Mrs. Seaver predeceased him, to Robles. After Mr. Seaver's death, Mrs. Seaver gave Robles a power of attorney to manage her property. In 1984, Mrs. Seaver executed a will in favor of Robles. In 1986, Mrs. Seaver executed a declaration appointing Robles as her guardian in the event of later incompetence. Beginning in 1987, Mrs. Seaver's health and mental acuity rapidly declined.

In March of 1987, Lummie Turk, one of Mrs. Seaver's nephews, filed an application in Lavaca County to be appointed as Mrs. Seaver's guardian. In the application, Lummie Turk alleged that Mrs. Seaver, who was 84 years old, was of unsound mind and unable to manage her affairs. That same month, Lummie Turk and a deputy removed Mrs. Seaver from Harris County to Lavaca County. During August of 1987, while in the custody of her nephews, Mrs. Seaver signed two documents purporting to be wills, which revoked all earlier wills. Mrs. Seaver died fewer than two months later.

Following her death, Robles filed Mrs. Seaver's 1984 will for probate in Harris County. The Turks filed a will contest, alleging that the 1984 will was executed while Mrs. Seaver was under the undue influence of Robles; that Mrs. Seaver revoked the 1984 will by a document signed in 1987; and that Mrs. Seaver died intestate, and as her only heirs, they were entitled to her estate.

The questions the court submitted to the jury and the jury's answers were:

**Question 1:** Do you find from a preponderance of the evidence at the time Grace Turk Seaver signed the will dated May 7, 1984, she was caused to do so by the exercise of undue influence of Gus C. Robles as that term is defined in this charge?

Answer "Yes" or "No."

"Undue Influence" as used in this charge, means such improper domination, constraint, or control of one person exercised over the mind of another as to be sufficient to subvert and overthrow such other person's volition and destroy his free agency, so that the party influenced has been thereby induced to do that which he would not have done had

he been left to act freely and voluntarily. Not every influence exerted by one person on the mind of another may be classified as undue influence. Persuasion, entreaty, importunity, argument, intercession and solicitation are permissible and do not constitute undue influence unless they subverted and overthrew the will of the person subjected to the influence and caused the doing of something that the person did not wish to do.

Answer: *No*

**Question 2:** Do you find from a preponderance of the evidence that the document dated August 6, 1987, and marked as Robles Exhibit # 21–A revoking all prior wills, was executed with all of the formalities required by law?

You are instructed that the formalities required by law are (i) that Mrs. Seaver signed the document, (ii) that two or more witnesses signed it in her presence, in the presence of each other, and (iii) that Mrs. Seaver knew the contents of the document, and understood the document when she signed it.

Answer "Yes" or "No."

Answer: *No*

**Question 3:** Do you find from a preponderance of the evidence that at the time Grace Turk Seaver signed the document dated August 6, 1987, and marked as Robles Exhibit 21–A revoking all prior Wills, she had testamentary capacity as that term is defined herein?

Answer "She had testamentary capacity" or "She did not have testamentary capacity."

*She did not have testamentary capacity.*

**Question 4:** [Summary of the question: Did Robles offer the 1984 will to probate in good faith?]

Answer: *Yes*

We address the Turks' first two points of error, in which the Turks contend the court improperly placed the burden on them to show Mrs. Seaver revoked her 1984 will and to show that Mrs. Seaver had testamentary capacity to execute the 1987 revoking instrument.

The Texas Probate Code sets forth only two ways Mrs. Seaver could revoke her 1984 will: (1) by executing a later will, codicil, or declaration in writing, with the same formalities of a will; or (2) by destroying or cancelling the 1984 will, or having it destroyed or cancelled in her presence. TEX.PROB.CODE ANN. § 63 (Vernon 1980); *see Morris v. Morris,* 642 S.W.2d 448, 449 (Tex.1982); *Huckaby v. Huckaby,* 436 S.W.2d 601, 605 (Tex.Civ.App.—Houston [1st Dist.] 1968, writ ref'd n.r.e.).

■ If a revoking instrument is offered for probate, courts require strict adherence to section 63 before they will find that a testator revoked a written will. *See Morris,* 642 S.W.2d at 449. The Turks contend, among other things, that Mrs. Seaver revoked her will "[b]y a later will, or declaration in writing executed with the same formalities of a will." TEX.PROB.CODE ANN. § 63 (Vernon 1980).

■ The Turks did not attempt to probate the 1987 revoking document as a will, but instead relied on oral testimony to establish that Mrs. Seaver revoked the 1984 will. The Turks assert they were not required to introduce the 1987 revoking document or to prove that Mrs. Seaver had testamentary capacity at the time she signed it. Their position is that the testimony of revocation was enough to rebut the presumption of the continuity of the 1984 will and require Robles to prove that Mrs. Seaver did not have testamentary capacity when she executed the 1987 revoking document. TEX.PROB.CODE ANN. § 88(b)(3) (Vernon 1980). We agree.

■ When Robles produced the 1984 will in court from the persons to whom Mrs. Seaver delivered it, and no question was cast on its *initial* authenticity, Robles was the beneficiary of the rebuttable presumption of continuity. *Ashley v. Usher,* 384 S.W.2d 696, 698 (Tex.1964). Once the 1984 will was introduced, it was the Turks' burden, as contestants, to produce some evidence to cast a doubt on this presumption of continuity. This was done by the Turks' oral testimony.

Once this prima facie evidence of the possible revocation is introduced, some doubt is cast on the *continuing* authenticity of the 1984 will. At this point, the presumption of continuity of the 1984 will is rebutted. This evidence of revocation then activated Robles' burden to prove, by a preponderance of the evidence, that the 1984 will had not been revoked. *In re Estate of Glover,* 744 S.W.2d 197, 199–200 (Tex.App.—Amarillo, 1987), *writ denied per curiam,* 744 S.W.2d 939 (Tex.1988).

In order to place the burden of proof properly, the charge must be worded so that an affirmative answer indicates that the party with the burden of persuasion on that fact established the fact by a preponderance of the evidence. In this case, the questions pertaining to testamentary capacity to execute the revoking instrument and whether the revoking instrument was executed with the formalities of a will should have been stated in the negative, as follows (without regard to exact language for the questions):

> Do you find from a preponderance of the evidence that at the time Grace Turk Seaver signed the document dated August 6, 1987, and marked as Robles Exhibit 21–A revoking all prior wills, she did not have testamentary capacity as that term is defined herein?
>
> Answer "She had testimentary capacity" or "She did not have testimentary capacity."
>
> If you answer that the testator did not have the capacity, do not answer the next question. If your answer is that the testator did have the capacity, then and only then, answer the next question:
>
> Do you find from a preponderance of the evidence that the document dated August 6, 1987, and marked as Robles Exhibit number 21–A, revoking all prior wills, was not executed with all of the formalities required by law?
>
> Answer "Yes" or "No."

Accordingly, jury questions two and three, as submitted in the court's charge, incorrectly placed the burden of proof on the Turks. Thus, we sustain the Turk's first and second points of error and hold

the trial court was incorrect in refusing to submit questions two and three in the proper form.

The Turks properly objected to the submission of these questions and, thus, preserved error. An objection to a question on the ground that the question does not properly place the burden of proof is sufficient to preserve error. *City of Austin v. Powell,* 156 Tex. 610, 613, 299 S.W.2d 273, 274–75 (1957); Tex.R.Civ.P. 278. Validity of an objection to any portion of a charge requires that the appellate court examine the charge as a whole to determine whether the error was harmless. *Briseno v. Martin,* 561 S.W.2d 794, 796 (Tex.1977), Tex.R.App.P. 81(b)(1).

Thus, the issue remains as to whether it was harmful error for the trial court to have improperly placed the burden of proof on the Turks in questions two and three. We hold it was not.

In order to determine whether an error in the jury charge is harmful, an appellate court must consider the pleadings of the parties, the evidence presented at trial, and the charge in its entirety. *Island Recreational Dev. Corp. v. Republic of Texas Sav. Ass'n,* 710 S.W.2d 551, 555 (Tex.1986); *Texas Employers Ins. Ass'n v. McKay,* 146 Tex. 569, 572, 210 S.W.2d 147, 149 (1948). The submission must be considered as a whole to determine whether the error was prejudicial. Error is deemed to be reversible only if, when viewed in light of the totality of these circumstances, it amounted to such a denial of the rights of the complaining party that it was reasonably calculated to cause and probably did cause the rendition of an improper judgment. *Trevino v. Brookhill Capital Resources,* 782 S.W.2d 279, 283 (Tex.App. —Houston [1st Dist.] 1989, writ denied); Tex.R.App.P. 81(b)(1).

Under the harmless error rule, Tex.R.App.P. 81(b)(1), the appellants must persuasively demonstrate to this Court that they have suffered harm from submission of the defective questions in the charge. *Nacol v. McNutt,* 797 S.W.2d 153, 156 (Tex.

App.—Houston [14th Dist.] 1990, writ denied). They have not done so.

The Turks failed to raise factual or legal sufficiency points of error to challenge the jury findings of nonrevocation of the 1984 will and lack of testamentary capacity to execute the 1987 revoking document. Thus, we must conclude that the jury found the greater weight of the credible evidence to be conclusive as to these issues. Further, the error in submission of questions two and three would be harmless since the jury made a definitive finding that "She [Mrs. Seaver] did not have testamentary capacity" to execute the 1987 revoking document. *Walker v. Eason*, 643 S.W.2d 390, 391 (Tex.1983); *Boatland v. Bailey*, 609 S.W.2d 743, 749–50 (Tex.1980).

■ In their third point of error, the Turks assert the trial court erred by refusing their request that an instruction on fiduciary duty be submitted as part of the undue influence instruction.

The jury question on undue influence that the court submitted was based on the case of *Rothermel v. Duncan*, 369 S.W.2d 917, 922 (Tex.1963), in which the court held there is a prima facie showing of undue influence when a will contestant proves:

1. the existence and exertion of an influence;
2. that the influence subverted or overpowered the mind of the testator at the time of the execution of the will; and
3. that the will which the testator executed would not have been executed but for the influence.

The Turks have not cited a case to this Court that requires a court to give an instruction on fiduciary duty in a will contest. On the contrary, there is authority that a court may properly refuse to give such an instruction. *Spillman v. Estate of Spillman*, 587 S.W.2d 170, 172 (Tex.Civ.App.—Dallas 1979, writ ref'd n.r.e.).

In *Spillman,* the will contestants claimed the proponents were fiduciaries to the testatrix, and asked the court to submit an issue on fiduciary duty. At the close of the evidence, the court instructed a verdict for the proponents on all issues except

undue influence, which it submitted to the jury. The jury answered the question adversely to the contestants, and they appealed.

On appeal, the *Spillman* court said the trial court did not err when it refused the instruction on fiduciary relationship. *Id.* at 172. The court held that evidence of a fiduciary relationship raises a presumption of undue influence. *Id.* The only effect of the presumption, the court said, was to establish the burden of producing evidence. *Id.* Here, as in *Spillman*, when the court submitted the issue of undue influence, the contestants received everything to which they were entitled. *Id.* Accordingly, we overrule the Turks' third point of error.

The judgment of the trial court is affirmed.