Opinion of April 26, 2007 Withdrawn; Reversed and Remanded and
Substitute Memorandum Opinion filed July 24, 2007








 

Opinion
of April 26, 2007 Withdrawn; Reversed and Remanded and Substitute Memorandum Opinion filed July 24,
2007.

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-05-01215-CV

____________

 

LARRY A. BUHMAN, Appellant

 

V.

 

JAMES LEIGH MCGAUGHY, Appellee

 



 

On Appeal from the 127th
District Court

Harris County, Texas

Trial Court Cause No. 03-37143

 



 

S U B S T I T U T E    M E M O R A N D U M    O P I N I O N

We overrule appellee=s motion for
rehearing, withdraw our opinion of April 26, 2007, and issue the following
substitute memorandum opinion.








James Leigh McGaughy, appellee, sued Larry A. Buhman,
appellant, to recover what he believed to be his share of a partnership
allegedly formed by an oral contract.  The jury found for McGaughy and awarded
damages and attorneys= fees.  Buhman appeals, arguing that the
trial court (1) improperly instructed the jury to assume that a partnership had
been formed unless Buhman proved otherwise, (2) improperly placed the burden of
proof on Buhman without requiring McGaughy to prove up the oral contract, (3)
erred in denying Buhman=s motion for directed verdict, and (4)
erred in awarding McGaughy attorneys= fees because his
claims were submitted as conversion claims rather than as a contract claim.  We
agree that the trial court=s instructions and the jury charge
improperly shifted the burden of proof.  Accordingly, we reverse and remand for
a new trial without reaching Buhman=s remaining
issues.

I.  Factual and Procedural
History

In 1995, Larry Buhman was working as a full-time dentist
when he and  a friend, John Goullet, formed a partnership and opened an upscale
cigar shop called AThe Smoke Ring.@  Buhman
contributed all the capital to start the business in return for a sixty-percent
partnership share.  In exchange for his forty-percent share, Goullet
contributed his industry knowledge, contacts, and management experience.  Their
partnership agreement was memorialized in a written contract, and the two men
co-signed for partnership obligations and shared profits proportional to their
partnership interest.  Because Goullet was responsible for the day-to-day
management of the shop, he was guaranteed monthly compensation of $2,000. 
Buhman was solely responsible for the bookkeeping and finances of the shop. 

In 1997, Buhman became dissatisfied with Goullet=s performance and
decided to terminate the relationship.  Because Buhman was still working full
time as a dentist, he needed someone to quickly assume the management
responsibilities for the shop.  He made partnership offers to three people:
Matthew Lichter, McGaughy, and another man identified at trial only as APeter.@  Both Lichter and
McGaughy testified regarding the partnership offers they received.

According to Lichter, Buhman offered to allow him to
purchase a forty percent partnership interest in the business for $15,000. 
Under the terms of this offer, Lichter would have been required to assume
Goullet=s responsibilities
for the day-to-day management of the shop; however, Lichter declined the offer.








McGaughy, who had been working part-time at The Smoke Ring,
accepted Buhman=s oral partnership offer, but their
agreement was not reduced to writing and its terms are hotly disputed.  The
parties agree only that McGaughy was to manage the store, and was promised a
forty percent share of the profits with a guaranteed minimum of $2,000 per
month.[1] 
McGaughy began managing The Smoke Ring on October 15, 1997.[2] 


For several years, McGaughy and Buhman used business cards
that identified each as AOwner@ of The Smoke
Ring.  Buhman paid for the cards.  McGaughy identified himself as an owner or a
partner in the business to his friends and family, and did so in Buhman=s presence without
correction.  The Smoke Ring was also repeatedly reorganized into various
business structures for tax advantages as directed by Buhman.  At one time, the
business was organized as a partnership, and Buhman identified McGaughy to the
Internal Revenue Service as the owner of a one-percent partnership interest;
however, Buhman claimed one hundred percent of the deductions arising from the
business on his personal tax return.








In 2003, Buhman became dissatisfied with McGaughy and told
him that his Aemployment@ was terminated. 
McGaughy filed suit, alleging breach of fiduciary duty and breach of the
partnership agreement.  Buhman answered that there was no enforceable
partnership agreement because the agreement described by McGaughy lacked
consideration and was not reasonably definite and certain.  Buhman further
alleged that McGaughy Awas offered the opportunity to become a
partner provided he made a $10,000 investment@ and that
investment of this sum, which Buhman characterized in his pleadings as a
condition precedent, had not been accomplished as required.  Buhman also
alleged that McGaughy breached the agreement by, inter alia, removing
merchandise from the store and using it to pay his personal debts.

At trial, Buhman=s testimony varied
somewhat from his pleadings.  He testified that he offered McGaughy a
forty-percent partnership interest if McGaughy paid Buhman $10,000 within three
years of assuming his management role.  According to Buhman, the money had to
be paid to him directly, rather than indirectly invested in the business.  He
further testified that he never considered McGaughy a partner, and that the
profit sharing arrangement was simply a compensation scheme similar to other
bonus and compensation structures in the industry.  Buhman emphasized that,
unlike Goullet, McGaughy never co-signed partnership obligations.  He further
testified that he allowed McGaughy to refer to himself as a partner and as an
owner of The Smoke Ring because Buhman expected McGaughy to make the required
payment within three years and because, as McGaughy=s friend, Buhman
did not want to embarrass him; however, Buhman also presented testimony of
other witnesses that McGaughy denied possessing an ownership interest.  Both
parties agreed that after managing the business for approximately three years,
McGaughy purchased a lawn-sprinkler business.  According to Buhman, he
understood at that time that McGaughy would not pursue Buhman=s partnership
offer.








Although the parties vigorously contested the issue of
whether the partnership agreement was supported by consideration, the trial
court did not submit a question on this issue.  Both parties objected to the
charge and proposed similar instructions asking the jury to determine, in the
first instance, whether a partnership was formed.  Under the proposed instructions,
the jury would have been asked to evaluate the elements of formation for an
oral contract, including consideration.  The trial court refused both proposed
instructions.  Buhman also objected to the court=s instruction that
stated: AYou are instructed
that Mr. McGaughy was a 40-percent partner in The Smoke Shop [sic], unless
there was a term of the agreement for him to pay $10,000 before becoming a
partner.@[3]  The only
relevant statement from the trial court concerning consideration is the
statement, made outside the jury=s presence, ABut the Court
finds legally sufficient consideration, undisputed, that [McGaughy] managed The
Smoke Ring for a number of years, more than three years.@  

In Question One of the charge as submitted, the jury was
asked the following:

Do you find that the parties agreed that:

A.      Leigh McGaughy was required to make a
$10,000 cash payment to Larry Buhman within three years before Mr. McGaughy
would have a 40% partnership interest in The Smoke Ring.

or

B.      Leigh McGaughy was NOT required to make a
$10,000 cash payment to Larry Buhman within three years before Mr. McGaughy
would have a 40% partnership interest in The Smoke Ring.

Choose A or B.

The
jury answered, AB.@  Having selected
this answer, the jury was next directed to Question Four as follows: AFind the fair
value of Mr. McGaughy=s 40% interest in The Smoke Ring at the
time he was locked out of the business.@  The jury
answered, A$126,000.@  The jury was
then directed to Question Seven, pertaining to the amount of McGaughy=s reasonable
attorneys= fees.   

On appeal, Buhman asserts inter alia that the trial
court improperly placed the burden of proof upon him, and did not require
McGaughy to prove the existence of an oral contract supported by the agreed
consideration. 

II.  Standard of
Review








We review alleged charge error for an abuse of discretion. 
Tex. Dept. of Human Servs. v. E.B., 802 S.W.2d 647, 649 (Tex. 1990).  To
determine if an error is reversible, we must consider the pleadings of the
parties, the evidence presented at trial, and the charge in its entirety.  See
Island Recreational Dev. Corp. v. Republic of Tex. Sav. Ass=n, 710 S.W.2d 551,
555 (Tex. 1986).  We will reverse only if the error, viewed in light of the
totality of the circumstances, amounted to such a denial of the rights of the
complaining party as was reasonably calculated and probably did cause the
rendition of an improper judgment.  See id.; Tex. R. App. P. 44.1(a)(1).  Omission of a key issue can be
fatal, requiring the case to be reversed or remanded.  See Sw. Bell Tel. Co.
v. John Carlo Tex., Inc., 843 S.W.2d 470, 471B72 (Tex. 1992)
(reversing and remanding because the trial court failed to include instruction
requiring jury to make finding central to claim).

III.  Analysis

A.      Governing Law 

In a breach-of-contract action, the plaintiff must prove:
(1) the existence of a valid contract, (2) performance or tendered performance
by the plaintiff, (3) breach of the contract by the defendant, and (4) damages
sustained by the plaintiff as a result of the breach.  Valero Mktg. &
Supply Co. v. Kalama Int=l, L.L.C., 51 S.W.3d 345,
351 (Tex. App.CHouston [1st Dist.] 2001, no pet.).  To be binding,
the contract must contain all essential terms and be sufficiently certain to
define the legal obligations of the parties.  Stinger v. Stewart &
Stevenson Servs., Inc., 830 S.W.2d 715, 720 (Tex. App.CHouston [14th
Dist.] 1992, writ denied).  In addition, the contract must be supported by
consideration.  Alex Sheshunoff Mgmt. Servs., L.P. v. Johnson, 209
S.W.3d 644, 659 (Tex. 2006) (Jefferson, C.J., concurring).[4] 
Consideration Amay be either a performance or a return promise
bargained for in a present exchange.@  Id.
(citing Roark v. Stallworth Oil & Gas, Inc., 813 S.W.2d 492, 496
(Tex. 1991).  Moreover, it is an Aelemental
principle of contract law that >nothing is a consideration that is
not regarded as such by both parties.=@  Connell v.
Provident Life & Accident Ins. Co., 148 Tex. 311, 314, 224 S.W.2d 194,
196 (1949).








It is essential that the parties agree on the consideration
supporting the contract.  See TCA Bldg. Co. v. Entech, Inc., 86 S.W.3d
667, 672 (Tex. App.CAustin, 2002, no pet.) (citing Restatement
(Second) of Contracts: Requirement of Exchange; Types of Exchange ' 71(4) (1981)).  It is not
enough that one party to the agreement offered consideration that could be
considered a fair exchange for the other party=s promise if the
offered consideration is not what the other party agreed to accept; rather, the
consideration must be that for which the parties bargained and on which they
agreed.  See id. (explaining that one party=s proffered
consideration was immaterial when the record did not show that the proffered
consideration was promised or accepted in exchange for the other party=s obligations).  

Although consideration may be implied in a written
contract, there is no presumption that an oral contract is supported by consideration.
 Okemah Constr., Inc. v. Barkley-Farmer, Inc., 583 S.W.2d 458, 460 (Tex.
Civ. App.CHouston [1st Dist.] 1979, no writ).  Consequently, it
is the plaintiff=s burden to plead and prove the element of
consideration in a suit on an oral contract.  Id. 

B.      Application to the Jury Charge       








Because this is a suit on an oral contract, the burden was
on McGaughy, as plaintiff, to plead and prove the existence of the alleged
partnership agreement.  That proof was required to include the element of
consideration, an issue which was hotly disputed at trial.  On appeal, McGaughy
argues that ABuhman knew the following consideration was afforded
in exchange for his partnership offer: quitting school; coming into the
business to manage; managing day-to-day operations; upgrading inventory; [and]
providing labor.@[5]  Buhman contends
that, at the time McGaughy was terminated or locked out, AMr. McGaughy was a
contract laborer who was getting paid 40 percent of profits.@  Moreover, Buhman
testified that, as the sole owner of the store, he could choose to treat the
store=s income as
profit, reinvest in the store, or simply withdraw the money and treat it as his
personal income to spend as he chose.  It is Buhman=s position that he
offered to exchange a forty-percent partnership interest for payment of $10,000
within three years, and that McGaughy=s work at the
store was not part of the consideration of the partnership offer.  In addition,
Buhman claimed that, if a valid contract was formed, McGaughy breached it by
stealing from the store or converting merchandise to his own use.

Although the issue of consideration was central to the
dispute, the jury=s ability to determine the terms of the
partnership agreement, if any, was limited by the court=s instructions. 
As part of the court=s charge, the jury was instructed, AThe term >preponderance of
the evidence= means the greater weight and degree of credible
testimony or evidence introduced before you and admitted in this case.@  The jury was
further instructed as follows: AWhenever a question requires other than a >Yes= or >No= answer, your
answer must be based on a preponderance of the evidence.@  However, the
jury was also instructed that AMcGaughy was a 40% partner in The Smoke
Shop [sic] unless there was a term of the agreement for him to pay $10,000
before becoming a partner.@[6]  








Whether the parties reached an agreement is a question of
fact.  Beal Bank, S.S.B., v. Schleider, 124 S.W.3d 640, 653 n. 8 (Tex.
App.CHouston [14th
Dist.] 2003, pet. denied).  Moreover, it is a question of fact on which
McGaughy bore the burden of proof.  See Advantage Physical Therapy, Inc. v.
Cruse, 165 S.W.3d 21, 24 (Tex. App.CHouston [14th
Dist.] 2005, no pet.) (ATo prove an action for breach of contract,
a plaintiff must establish the existence of an enforceable contract.@).  However, this
instruction required Buhman to rebut a presumption that McGaughy was a partner
in The Smoke Ring.  Thus, the jury instructions and charge as submitted
improperly shifted the burden of proof to Buhman, the defendant.

C.      Harm Analysis

Our review requires us to assess whether the charge error
was harmless.  McGaughy claims the error was harmless because the jury rejected
Buhman=s position
concerning the required consideration.  Buhman counters that McGaughy was the
party responsible for carrying the burden of proof and, as the charge stood,
the jury was not asked to find whether McGaughy proved up the contract as
required.  As explained above, Buhman correctly asserts that a proponent of an
oral contract has the burden to prove each element of the oral contract.  We
further agree with Buhman that the error was such that it was reasonably
calculated to cause and probably did cause the rendition of an improper
judgment.

In this case, the key issues in dispute were consideration
and whether a partnership was ultimately formed.  The jury was never asked to
find the bargained-for consideration.  As we have explained, it is not
sufficient that the offered consideration was adequate unless it is also shown
that the other party agrees to accept the offered consideration.  The jury was
never asked to find the parties agreed to the consideration that was provided
and that allegedly formed a partnership.  We therefore conclude the trial court
reversibly erred by shifting the burden of proof. 








To support his argument that any error was harmless,
McGaughy relies on two cases: Walker v. Eason, 643 S.W.2d 390 (Tex.
1982) (per curiam), and Turk v. Robles, 810 S.W.2d 755 (Tex. App.CHouston [1st
Dist.] 1991, writ denied).  Both cases involve the improper shift of the burden
of proof.  Walker, 643 S.W.2d at 390; Turk, 810 S.W.2d at 759. 
Aside from this characteristic, the similarity between those cases and this
case ends.  In both Walker and Turk, the jury was asked to answerCand did answerCthe key question
at issue.  In both cases, the pivotal issue was whether testators had the
requisite mental capacity to make testamentary instruments.  Walker, 643
S.W.2d at 390; Turk, 810 S.W.2d at 757B60.  Although the
burden of proof in those cases was reversed, the juries made definitive
findings that the testators lacked testamentary capacity.  Walker, 643
S.W.2d at 390; Turk, 810 S.W.2d at 758.  But the jury in this case made
no such definitive finding on the main issue at trial.

Given the nature of this case as a suit on an oral
contract, McGaughy was required to prove that he and Buhman agreed to the
consideration.  The jury was presented with one theory of consideration, for
which it made a negative finding, but made no positive findings accepting
McGaughy=s allegations
concerning formation of the partnership.  Cf. Turk, 810 S.W.2d at 759
(explaining that to place the burden of proof on the proper party, the question
must be worded such that an affirmative answer indicates the party with the
burden established the fact).  We cannot infer that the plaintiff met his
burden by a preponderance of the evidence simply because the jury rejected one
of the defendant=s theories.  Thus, we conclude the error
was harmful.  

Finally, McGaughy contends Buhman waived the buy-in
requirement, or alternatively, time was not of the essence for the payment.  In
these arguments, McGaughy continues to place the burden on Buhman to prove the
identity and failure of the bargained-for consideration.  As we have explained,
this is an improper placement of the burden of proof. 








Based on our review of the pleadings, the
evidence, and the charge, we conclude the trial court abused its discretion by
overruling Buhman=s objections to the charge.  Moreover, the
error was reasonably calculated to cause, and probably did cause, the rendition
of an improper verdict.  Accordingly, we sustain this issue.[7]

IV.  Conclusion

Having determined that the trial court committed reversible
jury-charge error, we reverse and remand for a new trial without reaching
Buhman=s remaining issues.

 

 

 

 

/s/      Eva M. Guzman

Justice

 

 

 

 

Judgment Reversed
and Remanded and Substitute Memorandum Opinion filed July 24, 2007.

Panel consists of
Justices Frost, Seymore, and Guzman.

 









[1]  If forty percent of the monthly profit was less than
$2,000, McGaughy would nevertheless receive $2,000.  The source of these funds
during unprofitable months is unclear.  We are unable to determine from the
record whether this was a Adraw@ against future profits that was required to be repaid
to the store in more profitable months, whether it was an treated as an expense
in unprofitable months, or whether Buhman was expected to make up any shortfall
in McGaughy=s compensation from his own funds.





[2]  At Buhman=s
direction, McGaughy locked Goullet out of the store.  Goullet subsequently sued
and reached a settlement with Buhman regarding his partnership interest.





[3]  Some of the discussion regarding the charge occurred
off the record. 





[4]  Although there are exceptions to this general rule, see
id.at n.3, none apply here.





[5]  McGaughy=s
argument that leaving school formed part of the consideration for the
partnership agreement is not supported by the record.  Although McGaughy
testified that he left school to manage the cigar store, no evidence was
presented at trial that Buhman asked McGaughy to abandon his studies or that
Buhman agreed to accept such an act as part of the consideration for the
partnership agreement.  The only evidence that McGaughy and Buhman discussed
this subject is the following testimony from McGaughy:

Q:         [H]ow did he lead into the
conversation about I=m going to make you this partnership offer?

A:         We were pretty close.  I remember he was
like, well, Leigh, I=m going to ask you something butCor maybe he made the offer first; but he also
cushioned it with, well, I know you are off on this track here, sales
engineer.  We talked about it often.  And I wouldn=t want to put you in a position to do anything, you
know, wrong for yourself; but I have this situation.  I feel confident that you
could do this.  I can=t do this; and would you at least think about it,
because I have the potential to lose everything with the present situation. 
And soC  





[6]  We note that this instruction also does not
accurately reflect Buhman=s contentions at trial because the instruction omits
the requirement that the sum be paid within three years.





[7]  Our analysis is unaffected by the trial court=s statement, ABut
the Court finds legally sufficient consideration, undisputed, that [McGaughy]
managed The Smoke Ring for a number of years, more than three years.@  The central issue in the case is not the adequacy of
the consideration, but the identity of the consideration.