MAXUS ENERGY CORPORATION,
Appellant

v.

OCCIDENTAL CHEMICAL
CORPORATION,
Appellee.

No. 05–06–01299–CV.

Court of Appeals of Texas,
Dallas.

Feb. 1, 2008.

Katherine D. MacKillop, Fulbright & Haworski, David Wilks Corban, Houston, for Appellant.

Deborah G. Hankinson, Elana S. Einhorn, Law Offices of Deborah Hankinson, PC, Dallas, Oliver S. Howard, Amelia A. Fogleman, Gable & Gotwals, Tulsa, OK, for Appellee.

Before Justices RICHTER, FRANCIS, and LANG–MIERS.

## OPINION

Opinion by Justice LANG–MIERS.

This appeal involves the interpretation of an indemnity provision in a stock purchase agreement. Maxus Energy Corporation appeals the trial court's judgment in favor of Occidental Chemical Corporation. We affirm the judgment.

## BACKGROUND

On September 4, 1986, Maxus, then known as Diamond Shamrock Corporation, sold one hundred percent of the stock of Diamond Shamrock Chemicals Company (DSCC) to Oxy–Diamond Alkali Corporation pursuant to a stock purchase agreement. In that agreement, Maxus agreed to indemnify the buyer and its affiliates, including Occidental, for certain matters related to DSCC's prior chemicals business. Those prior matters are referred to in the stock purchase agreement as the Inactive Sites and the Historical Obligations. The Inactive Sites include chemical plants and commercial waste disposal sites whose use had been discontinued before the execution of the agreement; the Historical Obligations include Agent Orange litigation pending at the time the agreement was executed and other liabilities and obligations associated with the discontinued businesses of DSCC.

Occidental claims that Maxus breached its obligations because it refused to indemnify Occidental for lawsuits filed by third parties relating to the Inactive Sites and Historical Obligations. Occidental contends that there is no time limit on Maxus's obligation to indemnify Occidental for litigation relating to the Inactive Sites and Historical Obligations. Conversely, Maxus contends that there is a time limit on its obligation to indemnify Occidental and that it is not obligated to indemnify Occidental for any litigation relating to the Inactive Sites and Historical Obligations that was commenced after September 4, 1998, twelve years after the sale.

The parties filed competing declaratory judgment claims and motions for summary judgment on those claims, arguing that the contract language unambiguously supports their respective positions. The trial court initially agreed with Maxus and rendered a final judgment in its favor. Upon reconsideration, however, the trial court concluded that the indemnity provision is ambiguous, vacated its judgment, and submitted the interpretation of the contract language to the jury. The jury found in favor of Occidental. Maxus appeals, arguing that the contract language is not ambiguous, and that the trial court erred by submitting the interpretation of the contract to the jury.[1] In two additional issues, Maxus argues jury charge error.

### INTERPRETATION OF THE CONTRACT

### A.  Standard of Review

██  The parties agree that Delaware substantive law controls our review of the contract language at issue in this appeal. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 71.031(c) (Vernon Supp.2007). Under Delaware law, the determination of whether a contract is ambiguous is a question of law. *Emmons v. Hartford Underwriters Ins. Co.,* 697 A.2d 742, 744–45 (Del.1997).

██  Although we apply Delaware law to interpret the contract, we apply Texas standards of appellate review. TEX. CIV. PRAC. & REM.CODE ANN. § 71.031(b) (Vernon Supp.2007); *see Brown v. Pennzoil–Quaker State Co.,* 175 S.W.3d 431, 435 (Tex. App.-Houston [1st Dist.] 2005, pet. denied); *Robin v. Entergy Gulf States, Inc.,* 91 S.W.3d 883, 885 (Tex.App.-Beaumont 2002, pet. denied). Under Texas law, we review questions of law de novo. *See In re D. Wilson Constr. Co.,* 196 S.W.3d 774, 781 (Tex.2006); *First Trust Corp. TTEE FBO v. Edwards,* 172 S.W.3d 230, 233–34 (Tex. App.-Dallas 2005, pet. denied).

### B.  Standards for Interpreting a Contract

---

1.  Maxus does not challenge the sufficiency of the evidence to support the jury's verdict.

■ Under Delaware law, our role when interpreting a contract "is to effectuate the parties' intent." *Lorillard Tobacco Co. v. Am. Legacy Found.*, 903 A.2d 728, 739 (Del.2006) (citations omitted). If we can glean the parties' intent from the clear and unequivocal language of the contract, we are bound to give the contract's terms their plain meaning. *Id.* We must "rely on a reading of all of the pertinent provisions of the [contract] as a whole, and not on any single passage in isolation." *O'Brien v. Progressive N. Ins. Co.*, 785 A.2d 281, 287 (Del.2001). We are to interpret the contract "in a way that does not render any provision 'illusory or meaningless.'" *Id.* (citations omitted).

■ "A contract is ambiguous only when its provisions are reasonably or fairly susceptible of different interpretations, or may have two or more meanings." *Lorillard Tobacco Co.*, 903 A.2d at 739 (quoting *Rhone–Poulenc v. Am. Motorists Ins. Co.*, 616 A.2d 1192, 1195–96 (Del.1992)). A contract is not rendered ambiguous simply because the parties do not agree upon its proper interpretation. *Id.* The true test is not what the parties intended the contract to mean, but what a reasonable person in the position of the parties would have thought it meant. *Id.* at 740. Under Delaware law, we may not consider extrinsic evidence in deciding whether a contract is ambiguous. *O'Brien*, 785 A.2d at 289.

## C. The Indemnity Provision

The specific language in dispute is found in section 9.03(a) of the stock purchase agreement:

Section 9.03 *Indemnification.*

Subject to the terms and limitations set forth in Sections 9.01, 9.02, 9.04 and 9.05 hereof:

(a) Seller [Maxus] shall indemnify[2] ... [Occidental] ... from and against any and all claims, demands or suits ... losses, liabilities, damages, obligations, payments, costs and expenses, paid or incurred, whether or not relating to, resulting from or arising out of any Third Party Claim (including, without limitation, the reasonable cost and expenses of any and all actions, suits, proceedings, demands, assessments, judgments, settlements and compromises relating thereto and reasonable attorneys' fees in connection therewith), and whether for property damage, natural resource damage, bodily injury (including, without limitation, damage and injury related to products and injury to any person living or dead on the date hereof or born hereafter), governmental fines or penalties (including, without limitation, for the violation of permits), pollution, threat to the environment, environmental remediation, or otherwise (individually and collectively "Indemnifiable Losses") relating to, resulting from or arising out of any of the following:

. . .

(ii) any Litigation,[3] whether commenced before or after the Closing Date but prior to the expiration of 12 years following the Closing Date, relating to any actions or omissions of any Diamond Company (including, without limitation, any DSCC Company) or any predecessor-in-interest thereof prior to the Closing Date, or any occurrences, accidents, incidents or events prior to the Closing Date,

---

**2.** This language defines Indemnifiable Losses.

**3.** The stock purchase agreement elsewhere defines Litigation as "any action, suit, claim, proceeding, investigation or written governmental inquiry."

relating to the business or activity of any Diamond Company (including, without limitation, any DSCC Company) or any predecessor-in-interest thereof, including, without limitation, the Litigation identified in Schedule 2.07, but excluding (A) matters expressly covered by Section 9.03(a)(i) which do not involve Third Party Claims, Section 9.03(a)(iii) or Article X hereof and (B) all matters with respect to which Litigation is commenced after the expiration of 12 years following the Closing Date.

. . .

(iv) the "Inactive Sites" (which for purposes of this Agreement, shall mean those former chemical plants and commercial waste disposal sites listed on Schedule 9.03(a)(iv) and all other properties which were previously, but which, as of the Closing Date, are not owned, leased, operated or used in connection with the business or operations of any Diamond Company, including, without limitation, any DSCC Company, or any predecessor-in-interest thereof), including, without limitation, any matter relating to any of the Inactive Sites for which (A) any Diamond Company (including, without limitation, any DSCC Company) on or prior to the Closing Date agreed to indemnify, defend or hold harmless any Entity, or (B) any Diamond Company may otherwise be held liable;

. . .

(viii) the Historical Obligations and any other obligations or liabilities (absolute or contingent) of any Diamond Company (including, without limita-

tion, any DSCC Company prior to the Closing) or any predecessor-in-interest thereof or of any DSCC Company unrelated to the Chemicals Business, including, without limitation, obligations and liabilities arising out of, resulting from or incurred in connection with, any ownership, use or operation of the business or assets of any Diamond Company other than a DSCC Company, whether before or after the Closing Date;

. . .

### D. Is the Language Ambiguous?

To determine whether the trial court erred in deciding that the language is ambiguous, we must first determine whether the language is reasonably or fairly susceptible to two or more meanings. *See Lorillard Tobacco Co.*, 903 A.2d at 739. Both parties argue that the language is unambiguous and supports their respective positions.

### 1. Maxus's Position

Maxus argues that all litigation relating to Indemnifiable Losses is subject to the twelve-year limit contained in subsection (ii) of section 9.03(a). To support this argument, it notes that subsection (ii)(A) of section 9.03(a), "any Litigation," specifically and only excludes subsections (i) and (iii) and Article X of the stock purchase agreement from the twelve-year time limit. It contends that the parties would not have excluded subsections (i) and (iii) and Article X from the twelve-year limit unless they intended the twelve-year limit in subsection (ii) to also apply to subsections (iv), the Inactive Sites, and (viii), the Historical Obligations, the subsections at issue here.[4]

---

**4.** Maxus argues we should apply the principle of *expressio unius est exclusio alterius* ("the expression of one is the exclusion of the other"). *See Am. Legacy Found. v. Lorillard Tobacco Co.*, 831 A.2d 335, 345 (Del.Ch.2003).

That principle, however, is more often applied by Delaware courts in statutory construction, as opposed to the "contractual, interpretive process" of gleaning the intent of two potentially adverse clients. *See Delmarva Health*

Maxus further argues that additional language in subsection (ii)(B) demonstrates that indemnification for all litigation relating to Indemnifiable Losses is subject to the twelve-year time limit because that subsection bars indemnity for Litigation for "all matters with respect to which Litigation is commenced after the expiration of 12 years following the Closing Date." We agree that this is one reasonable interpretation of the language.

Another reasonable interpretation is that this paragraph means that Maxus is obligated to indemnify Occidental for all litigation filed within those first twelve years except for litigation regarding the three exclusions. As a result, it is reasonable to conclude that the exclusions were limits on the types of litigation that were subject to indemnification during those first twelve years, not a limit on the types of litigation subject to indemnification after those first twelve years. It is also reasonable to conclude that if the parties had intended subsection (ii)(A) & (B) to limit indemnification relating to litigation for all Indemnifiable Losses, they would have said so. Consequently, the language is fairly susceptible to two or more interpretations.

Maxus also argues that its interpretation allows indemnity for "claims" for Inactive Sites and Historical Obligations, but not for "indemnity claims for lawsuits concerning those types of claims." Maxus contends that if Occidental is entitled to indemnification for "claims" and "suits" commenced after twelve years, the limit on Litigation contained in subsection (ii) is meaningless. Conversely, Occidental claims that Maxus's interpretation would render a significant portion of the language that defines Indemnifiable Losses

meaningless. Consequently, we cannot interpret this language as unambiguously supporting either party because to do so would render other language meaningless. See O'Brien, 785 A.2d at 287.

Maxus also contends that section 12.10, which requires both parties to maintain books and records for twelve years, supports its position. It argues that the parties would have required indefinite retention, or an outright transfer, of those records if the parties had intended indemnity in perpetuity. Occidental, however, contends that the purpose of the twelve-year record retention provision was to allow the parties to determine which of them was responsible under the reciprocal indemnity obligations of section 9.03 for claims arising out of the active chemicals business that Occidental would continue to operate. It contends that if the claims arose from conduct occurring before the closing, Maxus would be responsible, as long as the litigation commenced within twelve years of closing; and if the claims arose from conduct occurring after the closing, Occidental would be responsible. Both parties present reasonable arguments. We agree, however, that this provision lends some support to Maxus's interpretation.

## 2. Occidental's Position

Occidental contends that Maxus's interpretation rewrites the other subsections in the indemnity provision to insert a twelve-year limit on indemnification that is not in the express language of those other subsections. It agrees that it may not seek indemnification under subsection (ii) more than twelve years after the sale, but argues that the nine subsections in the in-

_Plan v. Aceto,_ 750 A.2d 1213, 1216 n. 12 (Del.Ch.1999) (mem.op.) (citing _Walt v. State,_

727 A.2d 836, 840 (Del.1999)).

demnity provision are each independent, stand-alone indemnification obligations.

Specifically, Occidental contends that its interpretation is supported by the use of the word "any" in the indemnity provision: that provision states that Maxus shall indemnify Occidental for Indemnifiable Losses "relating to, resulting from or arising out of any of the following," and then lists the nine subsections. Maxus argues, however, that this interpretation requires us to change the contract from "any of the following" to "any one of the following without regard to the other." We conclude, reading the indemnity provision as a whole, that Occidental's interpretation of the word "any" in this context is reasonable.

▓▓ Occidental also argues that the following language in section 9.01(b) supports its interpretation: "all covenants contained in this Agreement shall survive the Closing and remain in effect indefinitely" unless otherwise provided.[5] Maxus disagrees, contending that section 9.01(b) does not apply to the indemnity provision and, instead, refers to the representations and warranties in section 9.01(a). But if that is true, then subsection (b) is mere surplusage, because the time limits on the representations and warranties are specifically addressed in subsection (a). And we will not interpret a contract in such a way that renders language mere surplusage. *See Elliott Assocs., L.P. v. Avatex Corp.,* 715 A.2d 843, 851 (Del.1998).

Maxus also contends that Occidental's interpretation is wrong because section 9.01(b) refers only to the covenants contained in article VIII of the stock purchase agreement and does not apply to the indemnification provision in section 9.03. We again disagree. If the parties had intended that result, there would have been no reason for them to include the language at the beginning of the indemnity provision, section 9.03, "Subject to the terms and limitations set forth in Section 9.01...." We agree that the language of section 9.01 tends to support Occidental's interpretation that the parties intended Maxus's indemnity obligations for the Inactive Sites and Historical Obligations to have no time limit.

### 3. Our Conclusion

▓▓ Both parties present reasonable arguments supporting their views of how the specific language in dispute should be interpreted. Both interpretations, however, render other language in the stock purchase agreement meaningless. For these reasons, we conclude that the disputed language in the stock purchase agreement is "reasonably or fairly susceptible of different interpretations, or may have two or more meanings." *See Lorillard Tobacco Co.,* 903 A.2d at 739. As a result, we conclude that the agreement is ambiguous and the trial court properly submitted the interpretation of the disputed language in the contract to the jury.

We overrule Maxus's first issue.

### CLAIMED JURY CHARGE ERROR

In its second and third issues, Maxus argues that the trial court erred (1) by

---

**5.** Section 9.01, in its entirety, provides:

Section 9.01 *Survival of Representations and Warranties.*

´ (a) Each of the representations and warranties contained in Articles II and III hereof shall survive and remain in full force and effect after the Closing for the periods set forth in Schedule 9.01, or shall terminate and be of no further force and effect after the Closing, in each case as set forth in Schedule 9.01.

(b) Unless a specific period is set forth in this Agreement (in which event such specified period shall control), all covenants contained in this Agreement shall survive the Closing and remain in effect indefinitely.

refusing to instruct the jury on the proper standards for the interpretation of the indemnity provision, and (2) by improperly shifting the burden of proof to Maxus to prove the twelve-year limit applies to Occidental's requests for indemnity.

## A. Standard of Review and Applicable Law

We apply Texas procedural law to our review of jury charge error. *See Penny v. Powell,* 162 Tex. 497, 347 S.W.2d 601, 602 (1961). Texas Rule of Civil Procedure 277 requires a trial court to submit instructions and definitions to the jury as are necessary to enable the jury to render a verdict. Tex.R. Civ. P. 277; *State Farm Lloyds v. Nicolau,* 951 S.W.2d 444, 451–52 (Tex.1997). We review the trial court's submission of instructions and jury questions under an abuse of discretion standard. *See Nicolau,* 951 S.W.2d at 452.

## B. Jury Instructions

In its second issue, Maxus contends that the trial court erred by refusing to submit additional jury instructions relating to the interpretation of the indemnity provision. Maxus contends that Delaware law required the court to instruct the jury (1) to construe the indemnity provision narrowly in favor of the indemnitor, and (2) that language in an indemnity contract must be clear and unequivocal.[6] Conversely, Occidental contends that Delaware law supports its position that these heightened jury instructions were not required.

The cases Maxus cites to support its argument that these additional instruc-tions are required by Delaware law are cases in which the indemnitee was seeking indemnification for its own acts.[7] Here, Occidental is seeking indemnification for DSCC's acts prior to the execution of the stock purchase agreement, not Occidental's own acts. Maxus argues, however, that when Occidental merged with DSCC after the execution of the stock purchase agreement, the two companies "became one company" and DSCC's actions *are* Occidental's "own acts" for purposes of prospective indemnification claims. But Maxus does not cite any provision of the agreement or legal authority to support this argument. And the agreement expressly provides for Maxus's indemnification of Occidental, specifically referring to those obligations in terms of DSCC's former chemical plant operations and commercial waste disposal sites without any reference to a merger of those prior acts into Occidental's own acts.

In summary, Maxus has not shown that DSCC's actions should be imputed to Occidental. And we have not found any Delaware case that requires the trial court to submit a heightened standard of proof in the jury instructions in a case where the indemnitee is not seeking indemnification for its own acts. *See, e.g., Oliver B. Cannon & Son, Inc. v. Dorr–Oliver, Inc.,* 394 A.2d 1160, 1165 (Del.1978) (in which court interpreted indemnity provision in typical indemnity case and did not reference heightened jury instructions).

We overrule Maxus's second issue.

## C. Claim that Burden of Proof Shifted to Maxus

---

6. Occidental initially contends Maxus did not preserve error on this issue. We disagree. We conclude Maxus both objected to the court's jury charge and tendered the instructions. As a result, this issue is properly before us.

7. Maxus cites *Fina, Inc. v. ARCO,* 200 F.3d 266, 271–73 (5th Cir.2000); *Gloucester Holding Corp. v. U.S. Tape & Sticky Products, LLC,* 832 A.2d 116, 129 (Del.Ch.2003); *Rhone–Poulenc,* 616 A.2d at 1195–96; *Rock v. Delaware Elec. Co-op., Inc.,* 328 A.2d 449, 453–54 (Del.Super.Ct.1974); and several Delaware cases not designated for publication.

In its third issue, Maxus complains that question one of the jury charge improperly shifted the burden of proof. Neither Maxus nor Occidental cite any decision applying Delaware law on the issue of the burden of proof in a declaratory judgment action. Our review of Delaware law, however, indicates our sister state places the burden of proof in a declaratory judgment action on the party seeking to prove it is entitled to affirmative relief. *See Am. Legacy Found. v. Lorillard Tobacco Co.*, 886 A.2d 1, 18 (Del.Ch.2005), *aff'd*, 903 A.2d 728 (Del.2006). To properly place the burden of proof, the court's jury charge must be worded so that the jury's answer indicates that the party with the burden of proof on that fact established the fact by a preponderance of the evidence. *See Turk v. Robles*, 810 S.W.2d 755, 759 (Tex.App.-Houston [1st Dist.] 1991, writ denied).

Question one asked:

Are Occidental's section 9.04 requests for indemnity or defense for obligations under sections 9.03(a)(iv) and 9.03(a)(viii) limited by section 9.03(a)(ii) of the Agreement?

In answering this question, it is your duty to interpret the language of the Agreement attached hereto.

You must decide the meaning by determining the intent of the parties at the time of the Agreement. Consider all the facts and circumstances surrounding the making of the Agreement, the interpretation placed on the Agreement by the parties and the conduct of the parties.

You are further instructed that your answer must be based upon a preponderance of the evidence.

Answer "yes" or "no."

Answer: *No*

Maxus contends that Occidental had the burden of proof because it was the party seeking indemnification.[8] And it contends that this question improperly placed the burden of proof on Maxus as the party advocating that subsection (ii) limited indemnification for lawsuits brought regarding the Inactive Sites and Historical Obligations to those lawsuits brought within twelve years.

But, as we construe the parties' pleadings, Maxus and Occidental both sought affirmative relief and each had the burden to prove that it was entitled to that relief. Occidental sought affirmative relief by its request for a declaration that Maxus is obligated to indemnify Occidental indefinitely for lawsuits relating to the Inactive Sites and Historical Obligations. Maxus, on the other hand, sought affirmative relief by its request for a declaration that the agreement contains a twelve-year limit on indemnity for all litigation arising from all nine subsections of the indemnity provision.

The instruction for question one required the jury's answer to be based on a preponderance of the evidence, whether that answer was "yes" or "no." This did not place the burden solely on Maxus. Instead, it placed the burden on each party to prove its respective position by a preponderance of the evidence. As a result, we conclude that the trial court did not

8. Occidental contends that Maxus did not preserve error on this issue because its objection is not specific enough to inform the court of the error. We do not agree. Maxus objected to question one because it improperly shifted the burden of proof. Its objection is sufficient to preserve error. *See* Tex.R. Civ. P. 274; *Bargsley v. Pryor Petroleum Corp.*, 196 S.W.3d 823, 830 (Tex. App.-Eastland 2006, pet. denied); *Turk v. Robles*, 810 S.W.2d at 759 (citing *City of Austin v. Powell*, 156 Tex. 610, 613, 299 S.W.2d 273, 274–75 (1957)).

improperly shift the burden of proof on this issue.

We overrule Maxus's third issue.

### CONCLUSION

We affirm the trial court's judgment.